IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **JENNIFER INSALACO,** | * | |
| Plaintiff | * | |
| v. | * | CIVIL NO. JKB-10-1392 |
| **ANNE ARUNDEL CO. PUB. SCHS.,** | * | |
| Defendant | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM**

*I. Introduction*

Plaintiff Jennifer Insalaco sued her former employer, Anne Arundel County Public Schools ("AACPS"), in Maryland state court, alleging violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12111 *et seq.*, and Title VII, 42 U.S.C. § 2000e *et seq.*, as well as Maryland state law, in connection with her termination of employment and related events. (Compl. 4–7, ECF No. 2.) Defendant removed the case to this Court, invoking the Court's federal question jurisdiction. (ECF No. 1.) Defendant has filed a Motion for Summary Judgment (ECF No. 46) on all four of Plaintiff's counts. The matter has been briefed by the parties (ECF Nos. 46-1, 51-1 & 52), and no hearing is required, Local Rule 105.6 (D. Md. 2011). For the following reasons, Defendant's motion will be granted on all counts.

*II. Facts*

The undisputed facts are as follows. Plaintiff began working at Ruth Parker Eason School ("RPE") as a special education teacher in 2007 after spending one year at another school in the AACPS system. (Def.'s Mem. Supp. Mot. Summ. J., ECF No. 46-1, at 2; Pl.'s Mem. Opp.

Mot. Summ. J., ECF No. 51-1, at 2–3.) RPE "serves the most aggressive special education students" in Anne Arundel County and "address[es] the most profound special education needs" in the school system. (Def.'s Mem. 2.) Plaintiff fainted at work on October 4, 2007, and was hospitalized. (Def.'s Mem. 2; Pl.'s Opp. 3.) Plaintiff was diagnosed with a neurological condition resulting in various symptoms, including weakness in her legs and difficulty walking. (Def.'s Mem. 2; Pl.'s Opp. 3.) Plaintiff's doctor recommended, among other restrictions, that Plaintiff use a walker at work. (Def.'s Mem. 2; Pl.'s Opp. 4.) At some point, Defendant offered Plaintiff a temporary position at Maryland City Elementary School ("Maryland City"). (*See* Def.'s Mem. 3; Pl.'s Opp. 4.)[1] Plaintiff refused the reassignment, either wholly or partly because of the driving distance that the assignment would require. (Pl.'s Opp. 29–30; Def.'s Reply 4–5.) Plaintiff returned to RPE in early December of 2007 following a loosening of her medical restrictions. (Def.'s Mem. 4; Pl.'s Opp. 13.) Plaintiff left work in the middle of the day on January 15, 2008, due to tensions between her and her colleagues. (Def.'s Mem. 4–5; Pl.'s Opp. 14.) Plaintiff was placed on administrative leave and sent for a fitness-for-duty evaluation. (Def.'s Mem. 5; Pl.'s Opp. 14.) The fitness-for-duty evaluation was not completed; the parties disagree as to the reason why it was not completed. (Def.'s Mem. 6; Pl.'s Opp. 14–15.) On April 28, 2008, Defendant notified Plaintiff that Plaintiff's employment contract would not be renewed for the 2008–09 school year. (Def.'s Mem. 6; Pl.'s Opp. 16.)

---

[1] Plaintiff asserts that the possibility of a temporary position at Maryland City was discussed during the October 16, 2007, restrictions review conference (Pl.'s Opp. 4) while Defendant asserts that such possibility was raised for the first time in a letter dated October 26, 2007 (Def.'s Reply 4 n.7). Plaintiff's Exhibit 8, a letter from her then-lawyer to AACPS officials, is dated October 25, 2007, but purports to be a response to a letter "placed at Ms. Insalaco's door on November 5, 2007." (Pl.'s Ex. 20 at 1.) To confuse matters further, Defendant submitted a letter dated November 7, 2007, that appears otherwise to be identical to said letter other than in the placement of three lines of text. (Def.'s Ex. 18 at 1–2.) Because of these inconsistencies, the Court cannot determine, on this record, the exact time at which the possibility of the Maryland City assignment was first raised. Regardless, this factual discrepancy is not determinative of the outcome of this proceeding.

Plaintiff filed two complaints against Defendant with the Equal Employment Opportunity Commission ("EEOC").  The first was filed on October 24, 2007, and complained of discrimination based on disability.  (Def.'s Ex. 12.[2])  The second was filed "on or about" January 8, 2008, and also complained of discrimination based on disability.  (Compl. ¶ 23.)[3]  The EEOC determined that there was "reasonable cause" to support Plaintiff's charges of discrimination made against Defendant.  (Compl. Ex. A at 2.)  Specifically, the EEOC determined that there was reasonable cause to believe that Plaintiff was subjected to "denial of a reasonable accommodation, harassment and discharge based on her disability and retaliation for having engaged in a protected activity under the ADA."  (*Id.*)

### III. *Legal Standard—Motion for Summary Judgment*

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing predecessor to current Rule 56(a)).  The burden is on the moving party to demonstrate the absence of any genuine dispute of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  If sufficient evidence exists for a reasonable jury to render a verdict in favor of the party opposing the motion, then a genuine dispute of material fact is presented and summary judgment should be denied.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  However, the "mere existence of a scintilla of evidence in support of the [opposing party's] position" is insufficient to defeat a motion for summary judgment. *Id.* at 252.  The facts themselves, and the inferences to be drawn from the underlying facts, must be viewed in the light most favorable to the opposing

---

[2] The Court will refer to Defendant's exhibits using the same numbering as Defendant uses. (*See* Def.'s Reply 5 n.8.)

[3] Plaintiff claims to have filed an EEOC complaint at some time after she received the notice of termination (Pl.'s Opp. 16), but the record contains no evidence of such a filing.

party, *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008), who may not rest upon the mere allegations or denials of his pleading but instead must, by affidavit or other evidentiary showing, set out specific facts showing a genuine dispute for trial, Fed. R. Civ. P. 56(c)(1). Supporting and opposing affidavits are to be made on personal knowledge, contain such facts as would be admissible in evidence, and show affirmatively the competence of the affiant to testify to the matters stated in the affidavit. Rule 56(c)(4).

## IV. *Analysis*

Plaintiff alleges that Defendant violated federal and state law by failing to provide her with a reasonable accommodation for her disability, by subjecting her to a hostile work environment, by discharging her due to her disability, and by retaliating against her for filing a complaint with the EEOC. (Compl. ¶¶ 38–60.) Plaintiff has failed to create a triable issue of fact regarding any of these allegations.

The state law provision on which Plaintiff relies is identified only as "Maryland Rule 20-606" in many of Plaintiff's filings. (*E.g.*, Compl. ¶ 46.) The Court presumes that Plaintiff intended to refer to a Maryland statutory provision, Md. Code Ann., State Gov't § 20-606(a) (LexisNexis 2009), which prohibits, among other things, "discharge . . . [of] any individual . . . because of . . . disability" and "fail[ure] or refus[al] to make a reasonable accommodation for the known disability of an otherwise qualified employee." *Id.* § 20-606(a)(1)(i), (a)(4). Section 20-606 was enacted in 2009 and is "new language without substantive change derived from former Art. 49B, § 16(a) through (f)." *Id.* § 20-606 Revisor's Note (Acts 2009, ch. 120). Contrary to Defendant's apparent position (*e.g.,* Def.'s Reply Supp. Mot. Summ. J., ECF No. 52, at 2 n.3), the fact that Defendant has been unaware of the existence of this statute does not preclude

Plaintiff from making a claim under it.[4]  Similarly, Defendant's repeated insistence that Count IV (retaliation) be dismissed for failure to state a claim (*e.g.*, Def.'s Reply 2 n.4) cannot succeed simply because Defendant is unaware of the statutory provision supporting Plaintiff's position. While it would have been helpful for Plaintiff to point out the relevant provision earlier in the proceedings, her failure to do so until recently does not, by itself, defeat her claim of retaliation. The ADA prohibits retaliation against individuals who have "opposed any act or practice made unlawful by [Chapter 126 of Title 42] or . . . made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [such] chapter."  42 U.S.C. § 12203(a).  Plaintiff has alleged such retaliation (Compl. ¶¶ 53–60).

### A. *Count I: Failure to Provide a Reasonable Accommodation*

Under the ADA, an employer must "mak[e] reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee" unless "the accommodation would impose an undue hardship" on the employer.  42 U.S.C. § 12112(b)(5)(A).  To succeed on a charge of failure to provide a reasonable accommodation, a plaintiff must demonstrate that (1) she was disabled under the ADA, (2) her employer had notice of her disability, (3) she could perform the essential functions of the position with reasonable accommodation, and (4) the employer refused to make reasonable accommodation.  *Rhoads v. FDIC*, 257 F.3d 373, 387 (4th Cir. 2001).  Maryland law "prohibits discharge" of a disabled individual "only if a reasonable accommodation would allow [her] to perform the essential functions of the position [she] was hired to perform."  *Md. Comm'n on Human Relations v. Mayor and City Council of Baltimore*, 586 A.2d 37, 42 (Md. Ct. Spec. App. 1991) (interpreting provision of former Art. 49B).

---

[4] Although neither of the parties has made any arguments in support of or against Plaintiff's claims under § 20-606, this Court must decide for each Count of the Complaint whether Plaintiff has raised a triable issue of fact under § 20-606.

The ADA requirement of notice does not necessarily mean that the employee must request an accommodation directly. *See Colwell v. Rite Aid Corp.*, 602 F.3d 495, 506–07 (3d Cir. 2010) ("Indeed, '[t]he law does not require any formal mechanism or "magic words" to notify an employer that an employee needs accommodation'" (quoting *Conneen v. Am. Bank, N.A.*, 334 F.3d 318, 332 (3d Cir. 2003))). On the other hand, an employee who denies that she requires a reasonable accommodation cannot then claim that her employer refused to accommodate her disability. *Burch v. Coca-Cola Co.*, 119 F.3d 305, 314 (5th Cir. 1997) ("[A]n employee who requests only the opportunity to return to an unmodified, previously-held position fails to state a cognizable claim under 42 U.S.C. § 12112(b)(5)"); *Kocsis v. Multi-Care Management, Inc.*, 97 F.3d 876, 883 (6th Cir. 1996) (former employee "firmly stated in her deposition that she never requested any accommodation").

Such a denial is precisely what occurred in this case. Plaintiff has denied on at least one occasion that she needed a reasonable accommodation to continue working at RPE. (*See* Def.'s Ex. 17 at 5 (Plaintiff's ADA EEOC intake form).) Her responses at deposition were ambiguous (*see* Def.'s Mem. 8–9) and included an admission by Plaintiff that she had not requested an accommodation (Pl.'s Ex. 2 at 25:11–17). Additionally, Plaintiff's counsel informed Defendant that Plaintiff was "able to perform the essential duties and functions of her job with or with out [sic] an accommodation." (Pl.'s Ex. 20 at 1.) It is true that Plaintiff's doctors notified Defendant of Plaintiff's disability and of the potential need to accommodate it (*see, e.g.*, Def.'s Ex. 6), but Plaintiff's clear statement that she did not need an accommodation (Def.'s Ex. 17 at 5) bars her from alleging later that Defendant should have provided her with one and refused to do so. Because the evidence shows that Plaintiff could perform the essential functions of her former position without reasonable accommodation, the third *Rhoads* factor is dispositive of the issue of

Defendant's alleged failure to provide such.  Similarly, Plaintiff's failure to show that she required reasonable accommodation to perform the essential functions of her former position, and that Defendant failed to provide the same, defeats her claim under Maryland law.

Defendant also argues that Plaintiff has failed to exhaust her administrative remedies regarding reasonable accommodation.  (*E.g.*, Def.'s Reply 7.)  Given that Plaintiff's claim of denial of a reasonable accommodation fails on the merits, the Court need not decide this issue.  The Court will grant Defendant's Motion for Summary Judgment with respect to Count I of the Complaint.

### B.  Count II: Hostile Work Environment

*Fox v. General Motors Corp.*, 247 F.3d 169 (4th Cir. 2001), established that hostile work environment claims are cognizable under the ADA.  According to *Fox*, an ADA plaintiff alleging that she was subjected to a hostile work environment must show that (1) she is a qualified individual with a disability, (2) she was subjected to unwelcome harassment, (3) the harassment was based on her disability, (4) the harassment was sufficiently severe or pervasive to alter a term, condition, or privilege of employment, and (5) some factual basis exists to impute liability to the employer.  247 F.3d at 176–77 (citing *Brown v. Perry*, 184 F.3d 388, 393 (4th Cir. 1999) (applying elements to sexual harassment claim)).  To satisfy the fourth element, the plaintiff must demonstrate that her workplace environment was both subjectively and objectively hostile. *See* 247 F.3d at 178 (citing *Silk v. City of Chicago*, 194 F.3d 788, 804 (7th Cir. 1999)).  A court determining whether the fourth factor has been satisfied will consider the frequency and severity of the conduct at issue, the presence of physical threats or humiliation as opposed to "mere offensive utterance[s]," and whether the conduct interferes unreasonably with an employee's job performance.  247 F.3d at 178 (quoting *Walton v. Mental Health Ass'n of Se. Penn.*, 168 F.3d

661, 667 (3d Cir. 1999)). Maryland's Fair Employment Practices Act, which includes § 20-606 and "is the state law analogue of Title VII," *Alexander v. Marriott Int'l, Inc.*, No. RWT 09cv2402, 2011 WL 1231029, *6 (D. Md. Mar. 29, 2011), uses the same elements as Title VII in hostile work environment claims. *See id.* at *10 (stating analogous elements relevant to claim of sex discrimination based on hostile work environment). Therefore, the following analysis applies to Count III under federal and Maryland law.

Plaintiff cites several incidents that occurred at RPE beginning on December 5, 2007, to support her contention that she was subjected to a hostile work environment. (*See* Compl. ¶¶ 15-22.) Plaintiff claims that her belongings had been packed up and stored in a closet and that some of them were missing (Pl.'s Ex. 2 at 74:15–75:17), that her documents had been removed from the school system's server (*Id.* 75:18–77:8), that there were rumors circulating among faculty and staff that Plaintiff had a brain tumor (*Id.* 77:13–78:12), that other employees, including Plaintiff's two assistants, had not been told that Plaintiff would be returning to work (*Id.* 78:19–79:19), and that she was not paid on time and was forced to sign a settlement agreement to be paid on time (*Id.* 79:20–83:11).

Even if the Court accepts all of these allegations as true, they cannot support a claim of hostile work environment under the ADA. First, Plaintiff has not demonstrated (except perhaps with respect to the alleged rumors regarding her condition) that any of these incidents were because of her disability. Second, and more importantly, Plaintiff has not shown that these incidents, separately or together, amounted to harassment "sufficiently severe or pervasive to alter a term, condition, or privilege of employment." Plaintiff concedes that the alleged incidents were not pervasive because of the short time (less than two months) over which they occurred. (Pl.'s Opp. 35–36.) Plaintiff has cited no incidents of physical threats or humiliation directed

against her.  Additionally, Plaintiff has not demonstrated that any of the conduct at issue has affected her work performance; she has simply made vague statements to that effect.  (*See, e.g.*, Pl.'s Opp. 36 ("Insalaco was unable to continue working and was forced to return home").)  The closest that Plaintiff has come to showing a link between the conduct at issue and her work performance is through a letter from Dr. Nicholas Capozzoli, which states, "It is certainly clear that stress and anxiety contribute significantly to the worsening of [Plaintiff's] neurological condition and when her symptoms occur she is profoundly impaired."  (Def.'s Ex. 8.)  This statement is too generalized to demonstrate a causal link between the alleged harassment at work and Plaintiff's work performance.

Finally, Defendant has provided legitimate reasons for many of the incidents that Plaintiff claims created a hostile work environment.  Plaintiff was not paid on December 19, 2007, for work performed from December 5 to December 19 because nobody was paid on December 19 for work performed during that period.  (Def.'s Reply 8–9; Def.'s Ex. 14 ¶ 2 (Aff. of Florence Bozzella).)  Instead, Plaintiff was paid for that period on January 2, 2008, the same day as Defendant's other employees and "the actual pay date" for "the pay period of December 5–17[, 2007]."  (Aff. of Bozzella ¶ 2.)  There was no record on Defendant's servers of Plaintiff's documents being removed before Plaintiff returned to work on December 5, 2007, and Fred Bednarik, Senior Manager for the school system's Help Desk Section, stated in an affidavit that it would not even have been possible for anyone to remove Plaintiff's documents from the server from a remote location such as RPE.  (Def.'s Ex. 13 ¶¶ 2, 3.)  Defendant's employees' action of storing Plaintiff's belongings in her room during her absence cannot reasonably be considered hostile or offensive.  While it may be true that not every single action by Defendant's employees was justified, any hostility that Plaintiff faced at RPE fell far short of the hostility that, for

example, the *Fox* plaintiff experienced at work. *See* 247 F.3d at 172–75 (detailing "a barrage of harassment," including frequent insults by supervisors based on plaintiff's and other workers' disabilities and assignments that aggravated plaintiff's injuries).

In summary, Plaintiff has not shown facts sufficient to demonstrate that the conduct in question by Defendant's employees satisfies either the third or fourth factor under *Fox* and *Brown*. Plaintiff has therefore failed to create a triable issue of fact regarding Count II of her Complaint. Therefore, the Court will grant Defendant's Motion for Summary Judgment with respect to Count II.

### C. Count III: Discharge Based on Disability

A plaintiff asserting wrongful discharge based on disability discrimination must demonstrate that (1) she is within ADA's protected class, (2) she was discharged, (3) her job performance at the time of discharge met her employer's legitimate expectations, and (4) the circumstances of her discharge "raise a reasonable inference of unlawful discrimination." *Haulbrook v. Michelin N. Am.*, 252 F.3d 696, 702 (4th Cir. 2001). As Defendant correctly points out (Def.'s Reply 11), the "legitimate expectations" factor is distinct from an "essential functions of the job" analysis appropriate under a claim of failure to provide a reasonable accommodation. *See Ennis v. Nat'l Ass'n of Bus. & Ed. Radio, Inc.*, 53 F.3d 55, 61–62 (4th Cir. 1995) (detailing employer's evidence regarding former employee's deficient job performance). This test also applies under Maryland law. *See State Comm'n on Human Relations v. Kaydon Ring & Seal, Inc.*, 818 A.2d 259, 265, 277 (Md. Ct. Spec. App. 2003) (ALJ properly applied "analytical framework . . . under Title VII" to decide a claim of wrongful termination based on race under Article 49B and court followed that approach).

As with Counts I and II, it is unnecessary for the Court to discuss all of the factors here. In this case, the third and fourth factors are each dispositive of Plaintiff's claim. Defendant has identified several aspects of Plaintiff's job performance at RPE that were deficient, i.e., that did not meet Defendant's legitimate expectations. Defendant's evidence shows that Plaintiff's job at RPE was "a particularly physically demanding assignment among [Anne Arundel] County's special education schools" (Def.'s Mem. 2). (*See, e.g.,* Def.'s Ex. 1 at 20–24 (detailing Plaintiff's job duties).) Defendant has cited multiple instances in which Plaintiff could not live up to the job's high physical demands. For example, students injured Plaintiff on two separate occasions before the end of September (presumably within the first several weeks of Plaintiff's employment at RPE). (Def.'s Ex. 3 at 39–42.) Teachers at RPE must restrain students often (Def.'s Mem. 3), and at least one of these injuries resulted from a student escaping from Plaintiff's restraint (*see id.* (citing Def.'s Ex. 3 at 39–40)). On other occasions, Plaintiff failed to handle an aggressive student as she had been taught to do (Def.'s Ex. 1 at 43–49) and complained about how "low-functioning" the students were (Def.'s Ex. 22 ¶ 6). Plaintiff's shortcomings at work extended beyond her physical inability to handle her job and her impatience with the students at RPE. Defendant has introduced evidence showing that Plaintiff's personal interactions with her co-workers were strained. (*See* Def.'s Ex. 1 at 66, 100–04, 107, 112–14.) Plaintiff expressed her own feelings that she was "not fitting in" at RPE. (Attach. 3 to Def.'s Ex. 22.) Overall, the evidence shows that Plaintiff struggled to handle the physical challenges of teaching at RPE and also had difficulty maintaining good relationships with faculty and staff. Because Plaintiff has not denied that any of the above incidents occurred, the uncontroverted evidence demonstrates that at the time of her discharge, Plaintiff was not performing her job at a level that met Defendant's legitimate expectations.

Plaintiff has also failed to cite circumstances surrounding her discharge that "raise a reasonable inference of unlawful discrimination." Plaintiff was not discharged suddenly or unexpectedly soon after her employer discovered that she had a disability. On the contrary, she was informed, several months after her disability first became an issue, that her contract would not be renewed for the 2008–09 school year. (*See* Def.'s Mem. 2, 6.) While the Court assumes, without deciding, that an employer's failure to renew an employment contract counts as a discharge for the purposes of the ADA, the fact that Defendant did not discharge Plaintiff until the end of the school year makes the discharge less suspicious than it would be if, for example, it had occurred within a week of Plaintiff's hospitalization on October 4, 2007. Plaintiff was discharged on April 28, 2008, several months after her disability became apparent to Defendant's employees. (Compl. ¶ 33.) On these facts, the Court cannot say that Plaintiff has shown circumstances surrounding her discharge that "raise a reasonable inference of unlawful discrimination."

Even if a discharged employee has put forth a *prima facie* case of discriminatory discharge based on disability, an employer may rebut the plaintiff's case by providing legitimate, non-discriminatory reasons for discharging her. *Ennis*, 53 F.3d at 58. Defendant has offered several such reasons, including Plaintiff's inability to meet the physical demands of teaching at RPE, her impatience with the students at RPE, and the tensions between Plaintiff and her co-workers. Because Defendant has proffered legitimate reasons for discharging Plaintiff, Plaintiff could prevail (assuming that she had established a *prima facie* case of discriminatory discharge) only by demonstrating that the articulated reasons for discharging her were not the actual reasons for the discharge and that her disability was the real reason. *See St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 507–08 (1993) (applying analogous test in racial discrimination case). A

plaintiff may demonstrate pretext either by proving discriminatory intent directly or by showing that the employer's proffered non-discriminatory reasons for discharging her are unworthy of credence. *See Beatty v. Chesapeake Center, Inc.*, 818 F.2d 318, 320–21 (4th Cir. 1987) (quoting *Texas Dep't. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981)). Plaintiff has failed to prove Defendant's discriminatory intent directly. Additionally, Plaintiff does not deny the truth of the incidents that Defendant has cited in support of its proffered reasons for discharging Plaintiff; instead, she simply demands that Defendant provide written records of such incidents. (*E.g.*, Pl's Opp. 40–42.) Plaintiff's failure to deny that these incidents occurred demonstrates that Defendant's proffered reasons for discharging her are worthy of credence.

Count III of the Complaint fails because Plaintiff cannot demonstrate either that her work met Defendant's legitimate expectations at the time she was discharged or that the circumstances surrounding Plaintiff's discharge "raise a reasonable inference of unlawful discrimination." Alternatively, Count III fails because Defendant has offered legitimate, non-discriminatory reasons for discharging Plaintiff, and Plaintiff has not demonstrated that those reasons are pretextual. Plaintiff has failed to create a triable issue of fact with respect to Count III, and the Court will therefore grant Defendant's Motion for Summary judgment with respect to Count III.

### D. Count IV: Retaliatory Discharge

The ADA makes it unlawful for an employer to discharge an employee because she has "opposed any act or practice made unlawful" under the ADA or "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under the ADA. 42 U.S.C. § 12203(a). To demonstrate retaliatory discharge, a plaintiff must demonstrate that (1) she has engaged in conduct protected under the ADA, (2) she suffered an adverse action, and (3) there is a causal link between the protected conduct and the adverse action. *Rhoads*,

257 F.3d at 373. Maryland law imposes virtually identical requirements on a plaintiff alleging retaliation: the plaintiff must show "statutorily protected 'opposition' or 'participation,'" adverse employment action, and a causal link between the protected activity and the adverse action. *Martin Marietta Corp. v. Md. Comm'n on Human Relations*, 38 F.3d 1392, 1402 (4th Cir. 1994) (interpreting provision of former Art. 49B) (internal citation omitted).

The first two factors are not in dispute; Plaintiff filed a charge with the EEOC alleging disability discrimination (Def.'s Ex. 12; Compl. ¶ 23), satisfying the first factor, and she was discharged (again, assuming without deciding that failure to renew a contract constitutes discharge) (Def.'s Mem. 6; Pl.'s Opp. 16), satisfying the second factor. A burden-shifting framework similar to that used in discrimination cases applies to claims of retaliation. *See Rhoads*, 257 F.3d at 392.

Plaintiff has failed to show a causal connection between her EEOC filings and the non-renewal of her contract by Defendant. To argue that such a connection exists, Plaintiff relies on three factors: temporal proximity of the EEOC filings to the non-renewal of her contract, certain statements that some of Defendant's employees allegedly made to her, and events, described above in the discussion of Count III, that occurred upon Plaintiff's return to work in December of 2007. (*See* Pl.'s Opp. 44–46.) Plaintiff cites *Carter v. Ball*, 33 F.3d 450, 460 (4th Cir. 2001), for the proposition that temporal proximity between protected conduct and adverse employment action may be sufficient to satisfy the element of causal connection. (Pl.'s Opp. 45.) Defendant has offered substantial evidence (summarized in the discussion of Count III) of legitimate reasons for discharging Plaintiff. The evidence of legitimate reasons undermines Plaintiff's argument regarding temporal proximity since such evidence concerns events between the time of Plaintiff's first EEOC filing and the time of her discharge. (*See generally* Def.'s Mem. 2–6; Pl.'s

Opp. 3–5.) The burden is therefore on Plaintiff to demonstrate that Defendant's stated reasons for discharging Plaintiff were pretextual and that the discharge was actually in retaliation for engaging in protected conduct. *See Carter*, 33 F.3d at 460.

Plaintiff has failed to show that Defendant's proffered reasons for discharging her were pretext for unlawful retaliation. As evidence of Defendant's intent, Plaintiff points to a few statements made between the time of Plaintiff's return to RPE in December 2007 and her placement on administrative leave in January 2008. Plaintiff stated at deposition that an unspecified person called her a "sue monger." (Pl.'s Ex. 2 (Insalaco Dep., Jan. 3, 2011) 94:9–10.) Plaintiff also stated that Paulette Tanoue, Principal at RPE at the time, told Plaintiff that she "should not have filed the EEOC [complaint]." (*Id.* 94:9–11.) When Defendant's counsel asked what Ms. Tanoue's stated reason was for this remark, Insalaco responded that Ms. Tanoue had said, "Jennifer, if you're going after me, will you let me know?" (*Id.* 94:13–19.) This request is hardly evidence of retaliatory intent on Ms. Tanoue's part. Other than the "sue monger" comment, which Plaintiff attributes to nobody in particular, and Ms. Tanoue's arguably relevant but ultimately innocuous comment, Plaintiff does not identify a specific statement that suggests retaliatory intent on the part of RPE employees or anyone else. (*See id.* 93:18–96:21.)

Even if these two comments are accepted as evidence of retaliatory motive, they are far weaker evidence than has been accepted as evidence of retaliation in the Fourth Circuit. For example, in *Rhoads*, one of the defendant's employees had told the plaintiff that she "would regret" having consulted a lawyer concerning her rights under the ADA. 257 F.3d at 392. The plaintiff in that case had also argued that, after that statement was made to her, the defendant's sick-leave policies had been applied to the plaintiff more stringently than to other employees. *Id.* at 393. This evidence prompted the court to reverse a grant of summary judgment in the

15

defendant's favor on the plaintiff's retaliation claim. *See id.* at 393–94. Plaintiff's evidence in this case presents no example of any of Defendant's employees threatening to take action against her because of her filings with the EEOC. Instead, there is simply a request by Plaintiff's principal to be informed of pending complaints against her and a general comment on Plaintiff's litigiousness. These comments, without more, are not actionable under § 12203(a) or § 20-606(a).

Other actions that Plaintiff cites as retaliatory cannot support her claim because they do not amount to adverse employment actions. An adverse employment action is one that "would dissuade a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe R.R. Co. v. White*, 548 U.S. 53, 67 (2006). As other examples of retaliation, Plaintiff cites the fact that her co-workers were not alerted of her pending return in December, that Ms. Tanoue told others that Plaintiff had a brain tumor, that some RPE employees did not believe that Plaintiff "had returned formally at all," that Plaintiff's files had been removed from the school's servers, and that Plaintiff's belongings had been "packed up and stored." (Pl.'s Opp. 44.) Even assuming that Defendant took all of these actions, such actions would amount, in a reasonable worker's mind, to a bad day at work, not evidence of retaliation. Plaintiff also cites Defendant's refusal to pay Plaintiff unless Plaintiff signed a settlement agreement. (*Id.* 45.) Ignoring the fact that the settlement offer was a reasonable attempt at reconciliation—it offered Plaintiff back pay from October 17 through December 4, 2007, and $1500 in attorney's fees, in exchange for a release of Plaintiff's claims against the school system (Pl.'s Ex. 22)—Defendant has offered a legitimate reason, detailed in the discussion of Count II, for the fact that Plaintiff was not paid on December 19, 2007.

Plaintiff has failed to create a triable issue of fact on her claim for retaliatory discharge. Plaintiff has neither shown direct evidence of retaliation by Defendant nor demonstrated that Defendant's proffered reasons for discharging her were mere pretext for punishing her protected conduct. Therefore, the Court will grant Defendant's Motion for Summary Judgment with respect to Count IV of the Complaint.

*V. Conclusion*

For the foregoing reasons, the Court will grant Defendant's Motion for Summary Judgment (ECF No. 46) on all counts of the Complaint.[5]

DATED this 26th day of January, 2012.

BY THE COURT:

/s/
James K. Bredar
United States District Judge

---

[5] In light of the Court's ruling, the parties' arguments regarding Defendant's good faith (Def.'s Mem. 18–19; Pl.'s Opp. 46–48) need not be addressed.